## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SIGMA PHI SOCIETY (INC.), a
New York non-profit corporation,

     Plaintiff,

v.

MICHIGAN SIGMA PHI, INC.
d/b/a ALPHA OF MICHIGAN
SIGMA PHI, a Michigan non-profit
corporation, and MICHIGAN SIGMA
PHI HOUSING CORPORATION,
a Michigan non-profit corporation,

     Defendants.

Case No. 20-12817
Hon. Denise Page Hood

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 52), GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 50), MOOTING EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION (ECF No. 4) and MOOTING
EMERGENCY MOTION TO DISSOLVE AND/OR MODIFY THE
EX PARTE TEMPORARY RESTRAINING ORDER (ECF No. 32)**

## I.    INTRODUCTION

On October 20, 2020, Plaintiff Sigma Phi Society (Inc.) ("Plaintiff" or

"Society") filed a Verified Complaint against Defendants Michigan Sigma Phi, Inc.

("Michigan Sigma") and Michigan Sigma Phi Housing Corporation ("MSPHC")

(collectively, "Defendants").  Plaintiff alleges: (a) Federal Trademark Infringement

pursuant to 15 U.S.C. § 1125 (Count I); (b) Federal Trademark Infringement pursuant to 15 U.S.C. § 1114 (Count II); (c) Common Law Unfair Competition (Count III); and (d) Common Law Trademark Infringement (Count IV).

This matter is before the Court on a Motion for Summary Judgment filed by Defendants, ECF No. 50, and a Motion for Summary Judgment filed by Plaintiff. ECF No. 52.  The Motions have been fully briefed. For the reasons set forth below, both Motions for Summary Judgment are **GRANTED IN PART** and **DENIED IN PART.**

## II.   BACKGROUND

Plaintiff nationally operates the country's oldest existing Greek fraternity, and it has been in operation since 1827.  Pursuant to Plaintiff's Constitution (the "Constitution"), each Chapter must operate in compliance with the Constitution's letter and spirit. ECF No. 52, Ex. 3 at Article III, § 1. Under the Constitution, Plaintiff, through its General Convention, is the "exclusive judge" of the Constitution's letter and spirit. *Id*.  Plaintiff's S&A ("S&A") is authorized to act, and does act, on behalf of Plaintiff in many instances.  The Constitution provides, in relevant part:

> The Standing and Advisory Committee shall be the governing body of the Society in the intervals between General Conventions, and shall be empowered to act in the name of and on behalf of the Society in such intervals, except on matters reserved by these Restated Constitution and By-Laws.  The Standing and Advisory Committee shall be considered

to be, and shall be empowered to act as, the Board of Directors of the
Society in its corporate form. . . .

ECF No. 4-4, PageID 150 (Article VI, Section 1).[1]

The Constitution states that Plaintiff possesses the purpose and right "[t]o
maintain ownership and control of the name of the Society under any and all
appropriate intellectual property or similar laws." ECF No. 1-3, PageID 32 (Article
II, ¶ 5).  In 1955, Plaintiff federally registered the "Sigma Phi" and "ΣΦ" marks with
the United States Patent and Trademark Office (the "Trademarks").  Plaintiff has
used the Trademarks to solicit dues collections, to sell merchandise, to fundraise, to
communicate via national publications, to solicit donations for various causes, and
to recruit members to Sigma Phi. *Id*. at ¶ 12.

The Constitution also provides, in part, that "A Charter extends to a Chapter
the rights and privileges of a membership in the Society." ECF No. 1-3, PageID 48
(Article X, Section 1).  Michigan Sigma (or at least the entity that has been doing

---

[1]The Constitution does not afford the S&A the power to revoke the Charter of the Alpha
of Michigan Chapter:

> No charter shall be taken away by the General Convention (and only the General
> Convention may take away a charter) unless with the assent of at least three-fourths
> of the graduate members in attendance at such Convention, together with the
> concurrent assent of three fourths of all the Undergraduate Chapters, evidenced by
> a vote taken at the Convention by chapters.

ECF No. 4-4, PageID163 (Article XII, Section 1).  It is undisputed, however, that no vote of the
General Convention has been taken, and no party has argued that the Charter of Michigan Sigma
has been revoked.

business as Alpha of Michigan Sigma Phi) has been operating as a Chapter of Plaintiff since 1834, and it is undisputed that Michigan Sigma is a Charter of Plaintiff.  Defendants began using the Trademarks in 2010, and they have never paid any fee to use them.

Plaintiff asserts that Defendants have been using the Trademarks without permission since December 2019, when counsel for Plaintiff's S&A sent Defendants' leaders a cease and desist letter (the "Letter"). ECF No. 4, Ex. 8.  The Letter, titled "Insurance Issues," directed Defendants:

> to immediately cease and desist all activ[iti]es as an active chapter of Sigma Phi.  No gatherings, parties, events, rush, pledge events, or any other activities of any kind or nature are to occur using the name Sigma Phi, the Greek letters of Sigma and Phi, or any other intellectual property of Sigma Phi anywhere on or off of the University of Michigan campus by anyone that would normally be covered by the liability insurance.

*Id.*  The Letter set forth the following basis for the cease and desist directive:

> As you know, because of issues related to the actual roster of actives at the Alpha of Michigan, the S&A did not include the Alpha of Michigan in the insurance renewal application.  The S&A is unaware that suitable replacement insurance has been put in place and therefore, the Alpha of Michigan is both uninsured and in violation of [Plaintiff's] Bylaws.

*Id.*

It is undisputed that the "issues related to the actual roster of actives at the Alpha of Michigan" refers to the fact that the Alpha of Michigan chapter (Michigan Sigma) began to allow non-male members in 2016 or 2017 and has allowed non-

male members ever since.  Michigan Sigma acknowledges that it decides who becomes and does not become a member of its organization.

It is also undisputed that, in 2019, the then-members of Michigan Sigma's board of directors reminded the membership that "Sigma Phi is a fraternity of matriculated undergraduate males on college campuses which host Sig. chapters" and that "the underground nature of the[] initiation [of non-male members] represented a betrayal of the society's structure and purpose and that its secrecy over the years compounded the wrong." ECF No. 52, Ex. 20.

To resolve any doubt regarding eligibility requirements for Sigma Phi Chapters, at its General Convention in September of 2019, Plaintiff initiated several motions to interpret the Constitution with respect to certain membership requirements. ECF No. 1 at ¶ 22.  As reflected in its September 21, 2019 Minutes, the General Convention convened in Burlington, Vermont to, among other things, vote on three (3) specific motions pertaining to Sigma Phi membership requirements. These motions were: (1) whether the Constitution, as written, permitted females to join Sigma Phi; (2) whether the Constitution should be amended to permit females to join Sigma Phi; and (3) whether Plaintiff should reaffirm that Sigma Phi is a male-only fraternity. ECF No. 52, Ex. 4; ECF No. 1 at ¶ 23. The General Convention voted "No" as to the first two motions, and it voted "Yes" as to the third motion. ECF No. 52, Ex. 4; ECF No. 1 at ¶ 24.  Michigan Sigma attended, participated in, and voted

at the 2019 General Convention without any interference from Plaintiff. ECF No. 52, Ex. 14 at 157.  Defendants do not contest the result of the votes or the accuracy of the contents of the General Convention's Minutes.  The results were emailed to the Sigma Phi membership, and on September 30, 2019, Plaintiff's national publication, The Flame, circulated an email to Sigma Phi members confirming the General Convention held those three votes at the September 2019 meeting. ECF No. 52, Ex. 5.

Notwithstanding the General Convention's determinations regarding the Constitution and Sigma Phi member eligibility, Defendants continued to permit non-males to join Michigan Sigma and reside at the MSPHC fraternity house. ECF No. 1 at ¶ 29.  On October 17, 2019, at the request of Plaintiff, Michigan Sigma provided Plaintiff with a list of its members that included as many as 10 non-male members. ECF No. 52, Ex. 7.

On November 24, 2019, the S&A voted to remove Defendants from insurance coverage based on Defendants' deceit of admitting ineligible members and problems it would cause with Plaintiff's insurance. ECF No. 52, Ex. 25 at 1-2.  The November 24, 2019 S&A Minutes address the insurance coverage issue as follows:

> If we submitted the list to the insurance company [Plaintiff] would [be] endorsing Michigan's action of admitting women in direct contravention to the existing Constitution and Bylaws as re-affirmed at the Burlington Convention that we are a male only membership Society. If we removed the womens' [sic] names from the list while Michigan is continuing to include women in all aspects of the chapter,

we could be committing insurance fraud, which we aren't going to do.

*Id.* at 1.  On December 3, 2019, Plaintiff, through counsel, issued the Letter to Defendants, including Michigan Sigma Phi's then-President.  At the time the Letter was sent, "insurance was the immediate cause because of the concern [Plaintiff] had about insurance fraud." ECF No. 52, Ex. 16 at 72-73, 75; Ex. 25.

On March 4, 2020, with Michigan Sigma's delegate in attendance, the S&A met and voted to authorize Plaintiff's Chairman to file a lawsuit to stop Defendants' use of the Trademarks. ECF No. 52, Ex. 25.  Between February and July of 2020, Plaintiff's Chairman met and communicated with Michigan Sigma board members, including President Kevin Laliberte, to express Plaintiff's objections to Michigan Sigma's continued operations in violation of the Constitution (by having non-male members) and continued unauthorized use of the Trademarks. ECF No. 1 at ¶ 41; ECF No 52, Ex. 16 at 120.  Nonetheless, Michigan Sigma continued to operate in violation of the Constitution, MSPHC continued to house non-males, and Defendants continued to use the Trademarks. ECF No. 1 at ¶ 42.

During that period, Michigan Sigma: (a) used the Trademarks on its Facebook page, ECF No. 1 at ¶ 49; (b) continued to use the Trademarks to solicit donations, including in a March 20, 2020 email blast, ECF No. 52, Ex. 33; and (c) continued to fundraise and sell merchandise using the Trademarks. ECF No. 1 at ¶ 50. On June 23, 2020, Michigan Sigma distributed a written communication soliciting sales of t-

7

shirts bearing one of the Trademarks. ECF No. 52, Ex. 13.

In June 2020, Michigan Sigma also communicated with the Detroit Justice Center using the Trademarks. ECF No. 52, Ex. 33; Ex. 34; Ex. 35. Michigan Sigma specifically declined to make its fundraising contributions anonymous, writing, "I don't think there's any reason it should be anonymous, but if it is attributed I would specify that it's 'The Actives of the Alpha of Michigan Sigma Phi.'" ECF No. 52, Ex. 34. The Detroit Justice Center publicly identified the donations as having come from "The Actives of Sigma Phi – Alpha of Michigan." *Id*.  On July 22, 2020, Michigan Sigma sent another email blast soliciting donations. ECF No. 52, Ex. 35.

On September 24, 2020, Michigan Sigma sent out a notice of its intent to hold an October 24, 2020 Annual Meeting.  In that notice, Michigan Sigma identifies itself as the "Sigma Phi Society (aka Michigan Sigma Phi, Inc.)" and makes use of the mark ΣΦ. ECF No. 52, Ex. 12.  The agenda for the 2020 Annual Meeting included a proposed slate of candidates, including two female board member candidates. *Id*.

Plaintiff's S&A Chairman testified that when Plaintiff received notice that Defendants intended to hold a Sigma Phi election and bring non-male members onto Michigan Sigma's board in violation of the Constitution, Plaintiff undertook immediate legal action by filing this four-count cause of action. ECF No. 52, Ex. 14 at 117-18; 123-24. In its complaint, Plaintiff alleges: (a) Count I - violation of the

Lanham Act - False Designation of Origin and Trademark Dilution, 15 U.S.C. § 1125; (b) Count II - violation of the Lanham Act – Infringement of Registered Mark, 15 U.S.C. § 1114; (c) Count III - Common Law Unfair Competition; and (d) Count IV - Common Law Trademark Infringement.

Michigan Sigma has taken no actions to remove non-male members, prohibit non-male members from its board, or exclude non-male members from its fraternity house. ECF No. 52, Ex. 14, at 115, 120.

## III. LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477

U.S. 317, 323-24 (1986).

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material.  *Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

Plaintiff argues that the Court should grant summary judgment in its favor, and that the Court order: (1) a permanent injunction enjoining Defendants from using the Trademarks going forward, ECF No. 52, PageID 1711; and (2) that Defendants pay Plaintiff costs and reasonable attorney's fees, as permitted under the Lanham Act.  Plaintiff contends that there is precedent for granting the relief it seeks. *See Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity,* 654 F. Supp. 1095 (D.N.H. 1987) (summary judgment granted in favor of the national Kappa Sigma Fraternity against a local chapter).  In that case, a local chapter used a variant of the Kappa Sigma name (Kappa Sigma Gamma) rather than Kappa Sigma.  The court held that, "[a]s a matter of law, the names employed by defendants are likely to cause

10

confusion within the meaning of the Lanham Act." *Id.* at 1100. The court stated that "[e]ven to those uninitiated into the mysteries of Greek-letter societies, a fraternity house owned by 'The Kappa Sigma House, Inc.' could easily be assumed to be a house for Kappa Sigma members. And, it belabors the obvious to state that 'Kappa Sigma Gamma' is similar to 'Kappa Sigma'." *Id.* at 1101.

Two other courts have granted injunctions based on uses of a trademark that are similar to Defendants' use of the Trademarks. *See United States Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142-43 (3d Cir. 1981) (holding that the Jaycees' mark "is entitled to broad protection and that it was error to deny a "broad injunction" barring all use by the Philadelphia group of the name "Jaycee"); *Grand Lodge of Improved, Benevolent & P.O.E. v. Grand Lodge, Improved, Benevolent & P.O.E.*, 50 F.2d 860, 861-64 (4th Cir. 1931) (ordering permanent injunction based on a subordinate lodge using the identical name of the "Grand Lodge" in unfair competition).

Although *Kappa Sigma, Jaycees,* and *Grand Lodge* are not binding on this Court, the Court agrees with the conclusions reached in those cases, finds the reasoning therein applicable and persuasive regarding the issues in this case, and concludes that a permanent injunction barring Defendants' use of the Trademarks is warranted and appropriate, especially as Plaintiff has revoked the implied license Defendants had to use the Trademarks.

**A.     Trademark Infringement and Unfair Competition (Counts II-IV)**

A plaintiff alleging a violation of the Lanham Act for trademark infringement must demonstrate that: (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes the likelihood of confusion. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512-13 (6th Cir. 2007) (citing 15 U.S.C. § 1115(a)). The Court finds that Plaintiff has satisfied the first two *Leelanau Wine Cellars* conditions.  Plaintiff obtained and owns a valid and legally enforceable trademark – the Trademarks.  ECF Nos. 1-2, 1-3.  The Trademarks were registered on May 24, 1955, and issued for the establishment and maintenance of membership in a national collegiate fraternity. *Id.* There is also no question about the Trademarks' viability, as they have been used by Plaintiff for more than 65 years and continued to be used by Plaintiff to this date.

As to the third *Leelanau Wine Cellars* condition, the Court is to assess eight factors when analyzing likelihood of confusion. *See Frisch's Restaurants v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). Those eight factors include: (1) strength of the mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) likely degree of purchaser care; (5) the defendant's intent in selecting its mark; (6) marketing channels used; (7) likelihood of expansion of the product lines; and (8) evidence of actual confusion. *General Motors Corp. v. Lanard Toys, Inc.*,

468 F.3d 405, 412 (6th Cir. 2006) (factors rearranged).

These factors are only a guide to determine the likelihood of confusion. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). A plaintiff must demonstrate a likelihood of confusion to obtain equitable relief; a plaintiff must demonstrate actual confusion to recover statutory damages. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006).  "This Circuit considers the question of whether there is a likelihood of confusion a mixed question of fact and law." *Lanard Toys*, 468 F.3d at 412 (citation omitted).

The likelihood of confusion test applies with equal force to a Michigan common law claim for trademark infringement and unfair competition. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604-05 (6th Cir. 1991); *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1997).[2]

As to factor one, Defendants do not challenge the strength of the Trademarks. And, although Defendants claim that the *Kappa Sigma* court did not "discuss or apply the Sixth Circuit's relevant considerations for whether a mark is conceptually or commercially strong," they do not explain how Sixth Circuit law is different.

---

[2] "Under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, [the Sixth Circuit uses] the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." *Victory Lane Quick Oil Change, Inc. v. Darwich*, 799 F. Supp. 2d 730, 735 (E.D. Mich. 2011), citing *Audi AG*, 469 F.3d at 542; *Wilson v. Salem Sportswear, Inc.*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1997).

As to factor two, the Court finds that Defendants' use of the Trademarks in furtherance of a college fraternity is identical to that of Plaintiff's (and its Chapters), *i.e.*, the services are related.

As to factor three, Defendants acknowledge that both Plaintiff and Defendants "used the same Trademarks and those marks denote affiliation and membership in the Society," ECF No. 60, PageID.2163, so there is similarity of the marks.

As to factor four, "degree of purchaser care," the Court finds that this factor is not significant in its analysis due to the lack of "purchasers." Nonetheless, based on Defendants' use of the Trademarks verbatim, any prospective recruit or party solicited would likely be unable to differentiate Michigan Sigma from the Society. Defendants also do not supply any evidence or authority to the contrary.

As to factor five, Defendants' intent on using the Trademarks is clear: to associate itself with the Sigma Phi Society, continue using the Trademarks and their associated brand and goodwill, all of which weighs strongly in favor of Plaintiff. *See Kappa Sigma*, 654 F. Supp. at 1101 (the local chapter's "motive in selecting a variant of 'Kappa Sigma' as the chapter name and in keeping the name 'The Kappa Sigma House, Inc.' as a fraternity house name is more than 'suspect' . . . it is manifestly flawed."); *Frisch's Rests.*, 670 F.2d at 648 ("[t]he intent of defendants in adopting [their mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff], that fact alone may be

sufficient to justify the inference that there is confusing similarity.").

As to factor six, Defendants have used traditional solicitation channels, such as maintaining a website, on campus recruiting, and the fundraising with the Detroit Justice Center. ECF Nos. 52-31, 52-35. It is unclear how a prospective recruit would distinguish Defendants—using the name Sigma Phi and the mark "ΣΦ"—from affiliation with Plaintiff. Defendants focus on "sales," but ignore this issue with recruitment and confusion.

As to factor seven, the Court does not find that a consideration of "expansion" has much significance in this matter, though Plaintiff's argument that Defendants' current competitive use of the Trademarks undermines Plaintiff's desire to place a chapter that abides by the rules and membership eligibility requirements at the University of Michigan.

As to factor eight, there is not unequivocal "evidence of actual confusion" regarding the Trademarks or Michigan Sigma. However, it is undisputed that Defendants are using the Trademarks verbatim, and Defendants have produced no evidence that there is a lack of confusion, such that any person or entity does not believe that Defendants' use of the Trademarks is in any manner disassociated with Plaintiff.

Based on its consideration of the eight *Frisch* factors, the Court finds, as a matter of law, that Defendants' use of the Trademarks will cause a likelihood of

confusion. As discussed above, Defendants are using the Trademarks verbatim, and as the Trademarks literally are the English and Greek names for Plaintiff—"Sigma Phi" and "ΣΦ," respectively—Defendants' use of them would cause any reasonable person to associate Defendants with Plaintiff. Significant to the Court's conclusion is the fact that "proof of actual confusion is not necessary to obtain injunctive relief in a Lanham Act case," *Frisch's Rest.*, 759 F.2d 1261, 1267, and "the absence of actual confusion evidence is inconsequential." *Audi AG*, 469 F.3d at 543.

In cases like this one, likelihood of confusion is established based on a clear inference arising from a comparison of the marks and the context of their use. *See Elvis Presley Enters. v. Elvisly Yours, Inc.*, 817 F.2d 104 (6th Cir. 1987); *Phila. Jaycees*, 639 F.2d at 142-143 ("there is great likelihood of confusion when an infringer uses the exact trademark, in this case, 'Jaycees.'"). As Defendants are using the Trademarks "Sigma Phi" and "ΣΦ" verbatim, there is a clear inference of confusion arising from Defendants' use of the Trademarks compared to Plaintiff's use of the Trademarks.[3]

Defendants contend that, notwithstanding that determination, they retain the right to utilize the Trademarks because: (1) the Michigan Sigma charter has not been

---

[3]Plaintiff argues that Defendants wish to treat this case as one for goods rather than services, citing Defendants' focus on lack of volume of sales and related financials. The Trademarks, however, based on their own description, are for services, specifically for "Organizing of Chapters in a National Collegiate fraternity and maintaining membership therein." ECF No. 52-2; 52-3.

revoked, and (2) they have an implied license to use the Trademarks pursuant to their charter. Although it is undisputed that the Michigan Sigma charter has not been revoked, the Court is not persuaded that Defendants retain an implied license to use the Trademarks.

It is undisputed that Plaintiff knew of, and did not object to, Defendants' use of the Trademarks between 2010 (when Defendants were incorporated) and 2019. The existence of an implied license for the Trademarks, however, did not entitle Defendants to the unfettered use of the Trademarks because implied licenses are terminable at will. *See, e.g., Chi. Mercantile Exch. Inc. v. Ice Clear US, Inc.*, 2021 U.S. Dist. LEXIS 154686, at **43-44 (N.D. Ill. Aug. 17, 2021) (citation omitted) (observing that "Courts are in agreement that a trademark license is terminable at will by the trademark owner, even where it is an express license (unless the license is for a particular term) and certainly when the license is only implied"). As that court explained:

> [C]onsent is terminated when the actor knows or has reason to know that the trademark owner is no longer willing to permit the particular use. The unwillingness may be manifested by words or by conduct inconsistent with continued consent, such as the commencement of an infringement action.

*Id.* at *43 (citing Restatement (Third) of Unfair Competition § 29 (1995); *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016) (citing section 29).

*See also Coach House Rest., Inc. v. Coach and Six Rest., Inc.*, 934 F.2d 1551, 1563

(11th Cir. 1991) (concluding that an "implied license is terminable at will" and thus the mark owner may "terminate the license at any time and sue registrant for trademark infringement and unfair competition for any use subsequent to termination"); and *Dial-A-Mattress Operating Corp. v. Mattress Madnes*s, Inc., 847 F. Supp. 18, 20 n.1 (E.D.N.Y. 1994) ("An agreement conferring a license to use a trademark for an indefinite time, whether oral, written or by implication, is terminable-at-will by the licensor.").

In this case, the Court finds that Plaintiff notified Defendants on multiple occasions that Plaintiff no longer consented to Defendants' use of the Trademarks: (a) on December 3, 2019, when Plaintiff's counsel, on behalf of the S&A, notified Defendants via the Letter that Defendants could no longer use the Trademarks. ECF No. 52, Ex. 7; (b) in February 2020, when Plaintiff's Chairman (McCurdy) informed Defendants' representatives of this fact in person, *id*. at Ex. 16; (c) in March 2020, when the S&A authorized the filing of a lawsuit at a meeting where a Michigan Sigma delegate was present; and (d) on or about October 20, 2020, when this lawsuit was filed. Defendants argue that the Letter did not revoke their permission to use the Trademarks on December 3, 2019 because neither the General Convention nor the S&A voted to revoke or terminate Defendants' permission to use the Trademarks. Even if that is true, however, the Court finds that Plaintiff adequately and repeatedly notified Defendants that their permission to use the Trademarks had been revoked.

Defendants next assert that Plaintiff could not terminate Defendants' implied license because an "implied 'nonexclusive license may be irrevocable if supported by consideration. This is so because a nonexclusive license supported by consideration is a contract.'" *Mahavisno v. Compendia Bioscience, Inc.*, 164 F. Supp. 3d 964, 971 (E.D. Mich. 2016). Defendants believe that valid consideration exists in this matter, making Defendants' license irrevocable, because, upon being granted a Charter, a Chapter agrees to "uphold," "advance," and "fulfill" various duties proscribed by the Bylaws. Citing ECF No. 1-3, PageID 48 (Art. X, Sec. 1). The Court, however, finds that while Defendants may have exchanged consideration for being granted the Charter, Defendants fail to support its contention that any consideration was granted for the implied license to use the Trademarks.

Defendants also suggest that its use of the Trademarks after receiving the Letter and other demands to stop using the Trademarks was permissible because they only used the Trademarks internally. Defendants offer no evidence that Plaintiff ever communicated to Defendants that "internal" use of the trademarks were permissible, and that interpretation is contrary to the plain language of the Letter. Defendants did not limit their use to internal matters, as evidenced by their communication with the Detroit Justice Center in June 2020.

Defendants proffer an argument that Plaintiff's action should be barred by the doctrine of acquiescence. Acquiescence requires a "finding of conduct on the

plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." *Elvis Presley Enter.*, 936 F.2d at 894. Defendants, however, ignore the actions Plaintiff took to have Defendants stop using the Trademarks, beginning with the Letter in December 2019. More significantly, Defendants have not produced any evidence of assurances by Plaintiff.

Finally, Defendants argue that the Court should decline to issue this discretionary, equitable relief as doing so would be inequitable, unconscionable, and unjust. As Defendants state, and Plaintiff essentially admits, the underlying issue is that Plaintiff seeks to prohibit Defendants from having women members. Defendants contend that this shows that Plaintiff is engaged in unlawful discrimination.

The Court notes, however, that Defendants do not cite a single applicable case showing that Plaintiff has violated the law,[4] nor have they identified the law Plaintiff allegedly violated, filed a counterclaim, or filed a lawsuit against Plaintiff.

---

[4] Defendants cite *U. S. Jaycees v. Philadelphia Jaycees*, 490 F. Supp. 688 (E.D. Pa. 1979), representing that it stood for the proposition that courts should not enforce trademarks if doing so, in effect, "discriminates." The Third Circuit Court of Appeals reversed and vacated that decision. Phila. Jaycees, 639 F.2d at 146 ("The order of the district court will be vacated and the case remanded with directions to permanently enjoin the defendants from using the trademark 'Jaycee' or 'Jaycees' and for such other relief as is consistent with this opinion."). The Third Circuit actually directed the district court to prohibit a Jaycee chapter that insisted on admitting nonmale members contrary to the rules from using the Jaycee trademarks, just what Plaintiff has requested in this case. Defendants also rely on *United States Jaycees v. Cedar Rapids Jaycees*, 614 F. Supp. 515, 518 (N.D. Iowa 1985), a decision based on Iowa statutory law; as such, it has no relevance or applicability here.

Defendants also do not cite any cases where a court has held that a fraternity (or sorority) violates the Equal Protection Clause or any other provision of the United States Constitution for having single sex membership requirements. For those reasons, the Court declines Defendants' argument.

Accordingly, the Court concludes that Plaintiff is entitled to summary judgment on its claims in Counts II-IV (Lanham Act trademark infringement, common law unfair competition, and common law trademark infringement). The Court therefore grants Plaintiff's Motion for Summary Judgment and denies Defendants' Motion for Summary Judgment with respect to Counts II-IV.

### B. Trademark Dilution (Count I)

As to Plaintiff's claim in Count I for Lanham Act dilution, the Court finds that Plaintiff has abandoned that claim. Except for the seemingly inadvertent inclusion of the words "trademark dilution" once in its response brief, *see* ECF No. 61, PageID.2203 ("Third, Defendants' post-Dec. 3, 2019 use of the Marks was impermissible (and violative of the Constitution's member eligibility requirements), thereby constituting trademark infringement, trademark dilution, unfair competition."), Plaintiff did not mention or discuss trademark dilution or 15 U.S.C. § 1125 in its Motion for Summary Judgment, response brief, or reply brief. In addition, when responding to Defendants' assertion that Plaintiff had failed to address Counts I and III in its Motion for Summary Judgment, Plaintiff did not

dispute that it failed to address the Lanham Act trademark dilution claim (but correctly argue that it had addressed the unfair competition claim in Count III). *See* ECF No. 64, PageID.2444 (at n.1). Accordingly, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendants' Motion for Summary Judgment with respect to Count I (Lanham Act trademark dilution).

## C. Attorney Fees

A request for attorney's fees constitutes a request for relief, not a cause of action. Attorney's fees may be awarded under the Lanham Act in "exceptional cases." 15 U.S.C § 1117(a). A case is exceptional if "the infringement was malicious, fraudulent, willful, or deliberate." *Audi AG*, 469 F.3d at 551 (citation and internal quotations omitted). A case is "unexceptional" when "there has been no loss of sales due to the infringement." *Hindu Incense v. Meadows*, 692 F.2d 1048, 1052 (6th Cir. 1982).

The Court is not persuaded that Plaintiff is entitled to attorneys' fees in this matter. Although there is evidence that Defendants' use of the Trademarks was willful and deliberate, there is no evidence that it was fraudulent or malicious. To the contrary, Defendants were permitted to use the Trademarks for an extended period and, during the permitted time and the infringing period, Defendants' use and purpose was consistent with the Plaintiff's.

More importantly, there is scant evidence that Defendants reaped profits (or

even much income) from the use of the Trademarks or that Defendants' use caused Plaintiff any loss of sales. The fact that Plaintiff is not seeking any monetary compensation is indicative of the lack of financial harm. There also is no evidence that Defendants are competing with, or that Plaintiff has suffered any loss of membership due to Defendants' use of the Trademarks, as there is no evidence that Plaintiff has attempted to establish a new chapter at the University of Michigan.

For these reasons, the Court denies Plaintiff's request for attorney's fees. Each party shall be responsible for their own attorney fees and costs. Defendants should not, however, interpret the Court's ruling on attorney fees as ratifying, condoning, allowing, or even ignoring Defendants' violation of Plaintiff's rights with respect to the Trademarks, as previously discussed in this Order. And, any additional violation(s) of Plaintiff's Trademark rights will constitute violation(s) of a Court order and will be sanctioned accordingly.

## V.      CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary **Judgment (ECF No. 52)** is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment **(ECF No. 50)** is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that Count I of the Complaint is

**DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that judgment in favor of Plaintiff **SHALL BE ENTERED** with respect to Counts II, III, and IV.

**IT IS FURTHER ORDERED** that Defendants are **PERMANENTLY ENJOINED** from using the Trademarks.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney fees is **DENIED**.

**IT IS FURTHER ORDERED** that the Emergency Motion for Temporary Restraining Order and Preliminary Injunction **(ECF No. 4)** and Emergency Motion to Dissolve and/or Modify the Ex Parte Temporary Restraining Order **(ECF No. 32)** are **MOOT**.

**SO ORDERED**.

Dated: March 31, 2024       **s/Denise Page Hood**
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE